# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| **ERICA POWERS** | : | Case No. 2:21-cv-48 |
| **Plaintiff,** | : | Judge Bertelsman |
| vs. | : | Magistrate Judge Smith |
| **POMEROY IT SOLUTIONS SALES COMPANY, INC.** | : | |
| **Defendant.** | : | |

___

## MOTION FOR DEFAULT JUDGMENT
___

Plaintiff, Erica Powers, by and through counsel, moves this Court for a default judgment against Defendant Pomeroy IT Solutions Sales Company, Inc. pursuant to Rule 55 of the Federal Rules of Civil Procedure. On October 26, 2021, Defendant dismissed its counsel and its motion to waive appearance of counsel was denied. Defendant has since failed to retain new counsel to defend the action. Grounds in support for this motion are more fully set forth in the attached memorandum of law.

Respectfully submitted,

**MEZIBOV BUTLER**

/s/ Brian J. Butler
Marc D. Mezibov
Brian J. Butler (admitted *pro hac vice*)
615 Elsinore Place
Cincinnati, OH 45202
Phone: 513.621.8800
Fax: 513.621.8833
mmezibov@mezibov.com
bbutler@mezibov.com

*Attorneys for Plaintiff Erica Powers*

**MEMORANDUM**

**I.   Introduction**

Plaintiff, Erica Powers, brought this suit against Defendant, Pomeroy IT Solutions Sales Company, Inc. ("Pomeroy"), claiming violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101, and the Kentucky Civil Rights Act ("KCRA"), K.R.S. §344.040. Specifically, Ms. Powers claims that Pomeroy violated the ADA and KCRA when it failed to grant requested accommodations for her disabilities and terminated her because of her disabilities and in retaliation for her requests for accommodations. Defendant answered her complaint but has subsequently failed to defend the action. Ms. Powers now respectfully request that the Court grant her a default judgment against Defendant on her failure to accommodate, disability discrimination, and retaliation claims under the ADA and KCRA.

**II.   Procedural History**

Plaintiff, Erica Powers, commenced this action against Defendant, Pomeroy IT Solutions Sales Company, on April 6, 2021. On June 4, 2021, Defendant filed its Answer to Plaintiff's Complaint. (Doc. 7). On September 1, 2021, counsel for Defendant filed a Motion to Withdraw as Counsel of Record. (Doc. 19). In support of this motion, counsel averred that Defendant had presented them with written notice of their dismissal, while Defendant averred that it understood the consequences of dismissing its counsel in this matter.

Defendant subsequently filed a Motion to Waive the Appearance of Counsel on October 5, 2021. (Doc. 21). Defendant stated that it had wound down business and had no funds with which to pay new counsel to defend the present action. On October 21, 2021, the Court held a telephonic motion conference, in which the Motion to Withdraw as

2

Counsel of Record was granted, and the Motion to Waive the Appearance of Counsel was denied. (See Civil Minutes, Doc. 24). The Court ordered Defendant to retain new counsel and have that new counsel file an entry of appearance no later than November 5, 2021. The Court's deadline has long passed, and Defendant has not retained new counsel, nor has it undertaken any other defense of this action. Plaintiff submitted an Application to the Clerk for Entry of Default on April 12, 2022. (Doc. 27). Subsequently, April 14, 2022, the Court issued an order granting Plaintiff's request for entry of default, and ordering Plaintiff to file her motion for default judgment on or before May 9, 2022. (Doc. 28). Accordingly, on the same day, the clerk of courts properly entered a Default. (Doc. 29). Pursuant to the Court's order, Plaintiff now files the instant Motion for Default Judgment.

### III. Factual Background

The following facts entitle Ms. Powers to default judgment against Defendant Pomeroy IT Solutions Sales Company. Pomeroy hired Ms. Powers on July 15, 2019, as an HR Business Partner overseeing the Data Center Services and Warehouse business lines. (Doc. 1, ¶8). In or about the fall of 2019, Ms. Powers informed her supervisor, Felicia Kohlenberger that she suffers from attention deficit/hyperactivity disorder and anxiety, both of which are conditions which substantially limit the normal operation of Ms. Powers's neurological system. (*Id.* ¶9).

On January 8, 2020, during a quarterly objective meeting, Ms. Powers and her colleagues were asked to share their goals for the quarter. (*Id.* ¶10). When it was Ms. Powers's turn to share her goals— but before Ms. Powers had a chance to speak — Ms. Kohlenberger annoyedly told Ms. Powers to "hurry up." This comment triggered Ms. Powers' ADHD and anxiety, which in turn caused her noticeable difficulty addressing her colleagues in the meeting. (*Id.* ¶12-13). Later that evening, Ms. Kohlenberger called Ms.

Powers and asked her why she struggled to speak during the meeting. (*Id.* ¶14). When Ms. Powers informed Ms. Kohlenberger that presenting her goals to the group was a reaction to the annoyed comment Ms. Kohlenberger made, Ms. Kohlenberger became confrontational and accused Ms. Powers of questioning her leadership abilities. (*Id.* ¶15-16). Ms. Kohlenberger then stated that she did not "have time to worry about people's feelings," and could not have people "behaving like [Ms. Powers]." Because Ms. Kohlenberger "had a business to run," she told Ms. Powers that she should not attend leadership meetings going forward. (*Id.* ¶17). Subsequently, Ms. Kohlenberger instructed Ms. Powers to begin reporting to Jeff Bush, another HR Business partner, instead of her. (*Id.* ¶18).

When Mr. Bush initially introduced himself to Ms. Powers, he suggested that he and Ms. Powers get lunch on Friday, January 10, 2020. (*Id.* ¶19). During that lunch meeting, Ms. Powers informed Mr. Bush of her ADHD and anxiety conditions. He suggested that she take a week of paid time off work to speak with her doctors regarding her conditions. (*Id.* ¶20-21).

After that lunch, on January 31, 2020, Ms. Powers sent both Mr. Bush and Ms. Kohlenberger an email requesting accommodations for her ADHD and anxiety. In that email she specifically requested twelve possible accommodations. (*Id.* ¶22). Ms. Kohlenberger responded by asking Ms. Powers to submit a doctor's note, but implied that, even if Ms. Powers was granted an accommodation, Ms. Kohlenberger would continue to act in the same manner that led Ms. Powers to request accommodations in the first place. (*Id.* ¶23). Ms. Powers followed this instruction, and on February 4, 2020, submitted an accommodation request from her physician to Karen Schlemmer, Benefits Manager at Pomeroy. (*Id.* §24). In the accommodation request form, Ms. Powers's physician

4

requested five specific accommodations for Ms. Powers. (*Id*. ¶25). Upon receiving the accommodation request, Ms. Schlemmer contacted Ms. Powers's doctor's office, accusing Ms. Powers of filling out the request herself, although Ms. Powers's doctor confirmed that her office had filled out the form. (*Id*. ¶ 26).

Shortly thereafter, both Mr. Bush and Ms. Kohlenberger expressed displeasure with Ms. Powers regarding her request for accommodations. Mr. Bush approached Ms. Powers and told her that, even though she had requested accommodations for her disability, she was "still expected do [her] job", and on February 11, 2020, Ms. Kohlenberger told Ms. Powers that she was "upset and disturbed" that Ms. Powers had not disclosed her disabilities during the hiring process. Ms. Kohlenberger also told Ms. Powers that she was incapable of performing her job duties with or without a reasonable accommodation. (*Id*. ¶27-29). On February 20, 2020, less than a month after she requested accommodations for her disability, Mr. Bush terminated Ms. Powers. (*Id*. ¶30). Mr. Bush claimed that Pomeroy was terminating Ms. Powers because she was not a "good fit" for the company. (*Id*. ¶31). However, Pomeroy's justification for terminating Ms. Powers is pretext for illegal discrimination on the basis of her disability and for requesting accommodations for her disability. (*Id*. ¶32). As a direct and proximate result of Pomeroy's unlawful actions, Ms. Powers has suffered and continues to suffer economic injuries in the form of lost pay and benefits, as well as non-economic injuries, including emotional distress, pain, and suffering. (*Id*. ¶33).

## IV. Law and Analysis

Ms. Powers moves for default judgment and an award of damages against Defendant for failure to accommodate, disability discrimination, and retaliation in violation of 42 U.S.C. §12101 and K.R.S. §344.040.

"Following the Clerk's entry of default pursuant to Fed R. Civ. P. 55(a) and the plaintiff's application for default judgment under R. 55(b) 'the complaint's factual allegations regarding liability are taken as true, while allegations regarding the amount of damages must be proven.'" *Stafford v. MST Financial Solutions, Inc.,* No. 3:17-CV-513-CHB, 2020 WL 1033542 at *1 (W.D. Ky March 3, 2020)(quoting *Trustees of Indiana State Council of Roofers Health & Welfare Fund v. Mech.,* No. 1:17-CV-786, 2019 WL 590870, at *2 (S.D. Ohio Feb. 13, 2019). Thus, to be entitled to judgment, Ms. Powers must allege facts sufficient to support the essential elements of each of her claims.

**1. Failure to Accommodate**

First, the essential elements of a claim for disability discrimination for failure to accommodate are: 1) the plaintiff is disabled; 2) the plaintiff is otherwise qualified for the position with or without a proposed accommodation 3) the employer knew about her disability; 4) the plaintiff requested an accommodation; and 5) the employer failed to provide the necessary accommodation. *Johnson v. Cleveland City School Dist.* 443 Fed. Appx. 974, 982-83 (6th Cir. 2011). Under the ADA, "A person is regarded as disabled if she has an 'actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." *Bailey v. Real Time Staffing Services, Inc.,* 543 Fed.Appx. 520, 523 (6th Cir. 2013) (citing 42 U.S.C. §12102(3)(A)).

Ms. Powers suffers from ADHD and anxiety which substantially limit the normal operation of her neurological system and constitute disabilities under the ADA. (Doc. 1, ¶9). Ms. Powers was qualified for her position with a reasonable accommodation. (*Id.* ¶¶37, 43). Pomeroy knew about Ms. Powers's disabilities because Ms. Powers discussed her disabilities with both Ms. Kohlenberger and Mr. Bush. (*Id.,* ¶¶10, 15, 20, 22, 28). Both

6

Ms. Powers and her physician requested accommodations for her disability. (*Id.*, ¶22, 24, 25). Thereafter, Defendant did not grant any accommodation. Instead, both Ms. Kohlenberger and Mr. Bush berated Ms. Powers for requesting accommodations, and ultimately terminated her instead of granting her an accommodation. (*Id.* ¶¶26-32; 38). Thus, it is clear from the facts alleged that Ms. Powers has supported her claim for failure to accommodate.

### 2. Disability Discrimination

Second, to support a claim under the ADA, "[t]he initial burden is on the plaintiff to make out a prima facie case, which under the ADA requires a showing that 1) the plaintiff was protected under the ADA; 2) the defendant knew the plaintiff was protected; 3) the defendant took an adverse action against the plaintiff; 4) there was a causal connection between the adverse action and the plaintiff's protected status." *Bailey,* 543 Fed.Appx. at 523 (citing *A.C. ex rel. J.C. v. Shelby Cnty. Bd. Of Educ.,* 711 F.3d 687, 697 (6th Cir. 2013). The prima facie case is generally satisfied upon a showing of "action taken by the employer from which one can infer, if such action remains unexplained, that it is more likely than not that such actions were based on a discriminatory criterion…". *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 576 1978*); See also Shah v. Gen. Elec. Co.*, 816 F.2d 264, 268 (6th Cir. 1987) ("the central inquiry in evaluating whether the plaintiff has established his initial burden is whether it is sufficient to create an inference [of discrimination]"). Once the prima facie case has been established, the burden shifts to the employer to articulate a non-discriminatory explanation for the termination. *Whitfield v. Tennessee,* 639 F.3d 253, 259 (6th Cir. 2011).

The first and second elements of Ms. Powers' disability discrimination claim are identical to the first and third elements of her failure to accommodate claim and are

7

likewise satisfied. Furthermore, Pomeroy unquestionably took an adverse employment action against Ms. Powers by terminating her. (Doc. 1, ¶30). The facts also clearly show the causal connection between Ms. Powers's disabilities and her termination and that the actions taken by Pomeroy were "more likely than not based on a discriminatory criterion." *Furnco Const. Corp.*, 438 U.S. at 576. Starting in January 2020, Ms. Powers experienced open criticism, hostile comments, displeasure at, and skepticism directed at her disabilities and requests for accommodation, and she was ultimately fired within one month of requesting accommodations on the pretense that she "wasn't a good fit", for the company. (Doc. 1, ¶16,17, 23, 26-31). One cannot infer from these circumstances that Ms. Powers' termination was motivated by anything *but* discriminatory motive, and at the very least Ms. Powers has plead facts which show that her termination was more likely than not motivated by discriminatory reasons.

With the prima facie case well established, the burden of production would typically then shift to the Defendant to propose a legitimate, non-discriminatory reason for the termination, however, Defendant has declined to do so in this case. Thus, Ms. Powers has alleged sufficient facts to support her claim of disability discrimination.

**3. Retaliation**

Finally, the essential elements of an ADA retaliation claim are: 1) The plaintiff engaged in protected activity under the ADA; 2) the defendant knew of the plaintiff's protected activity; 3) the defendant took an adverse employment action against the plaintiff; and 4) the protected activity and the employment action are causally connected. *Keogh v. Concentra Health Serv's, Inc.,* 752 Fed. Appx. 316, 324-25 (6th Cir. 2018). Requesting an accommodation is protected activity under the ADA. *Rorrer v. City of Stow,* 743 F.3d 1025, 1046-47 (6th Cir. 2014). Pomeroy was aware of Ms. Powers'

8

protected activity of requesting an accommodation, evidenced by the fact that she made such requests in writing to her two managers and the HR representative, and all three subsequently questioned or confronted Ms. Powers regarding those requests. (Doc. 1, ¶ 22-27). Within a month after Ms. Powers made these requests, Pomeroy terminated Ms. Powers. As described above, the causal connection between Ms. Powers' requests for accommodation and her termination is well established. (*See Id*. ¶¶26-33). Thus, Ms. Powers has alleged sufficient facts to establish each claim set forth in her complaint.

## V. Damages

As a direct and proximate result of Defendant's unlawful actions, Ms. Powers has suffered and continues to suffer economic injuries in the form of lost pay and benefits, as well as non-economic injuries, including emotional distress and pain and suffering. Because Defendant has defaulted, the factual allegations in the complaint, except those that relate to the amount of damages, are deemed true. *Antoine v. Atlas Turner, Inc.,* 66 F.3d 105, 110 (6th Cir. 1995). As such, the civil rules "require that the party moving for a default judgment must present some evidence of its damages." *Mill's Pride, L.P. v. W.D. Miller Enter.,* No. 2:07-CV-990, 2010 WL 987167 at *1 (S.D. Ohio, March 12, 2010). To that end, Plaintiff submits the Declaration of Plaintiff Erica Powers, attached hereto as Exhibit A, and the Declaration of Brian J. Butler, attached hereto as Exhibit B in support of her claim for damages and reasonable attorney's fees.

### 1. Back Pay

Ms. Powers earned $75,000 per year, or $1,442.00 per week while she worked at Pomeroy. (Exhibit A, ¶2). She was unemployed for 50 weeks after her wrongful termination from Pomeroy, during which time she would have made $72,100.00 in wages. (*Id.*,¶5). Ms. Powers began a new job on February 1, 2021, where she made

9

$48,000.00 per year. (*Id.* ¶5,6). During the 21 weeks she worked at that job, she made $19,384.62 in gross wages, which was $10,897.38 less than what she would have earned working at Pomeroy over the same period. (*Id.* ¶7). In July, 2021, Ms. Powers found a new job that paid more than what she had earned at Pomeroy, thereby mitigating further lost wages. (*Id.,* ¶8). Furthermore, Ms. Powers received employment benefits while at Pomeroy, and did not receive benefits over the whole 71-week period until her damages were mitigated. While Plaintiff requested Pomeroy produce documents regarding the valuation of Ms. Powers's benefits during discovery, Pomeroy ultimately did not respond to discovery. (Exhibit B, ¶15, 16). As such, Plaintiff is unaware of the sum certain value of these benefits, however, Plaintiff suggests that the value of those benefits can be fairly calculated as 20% of her yearly earnings. Calculated over 71 weeks that she was without benefits, Ms. Powers lost approximately $20480.00 in value of benefits.

Ms. Powers lost $72,100.00 in wages while unemployed, and $10,897.38 in wages while employed at a lower-paying job, and approximately $20,480.00 in value of lost benefits, totaling approximately $103,500 in lost wages.

**2. Non-Economic Damages**

Ms. Powers endured significant emotional distress and suffering as a result of Defendant's actions. Due to Defendant's hostility toward and skepticism of her disability, as well as the hardship inflicted by her termination and loss of work and benefits, Ms. Powers has suffered significant non-economic injury. Especially given the nature of her specific disabilities, ADHD and anxiety, she has experienced great difficulty for which she is entitled to be compensated, but which is difficult to quantify. Plaintiff suggests that,

based on the nature and circumstances of the case, a jury would likely award Ms. Powers an amount of non-economic damages equal to the amount of her lost wages, or $103,500[1].

### 3. Attorney's Fees and Costs

Attorney fees are authorized under the ADA pursuant to 42 U.S.C. §12117, which incorporates the enforcement provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-5. A prevailing plaintiff in a civil right sanction "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Christiansburg Garment Co. v. Equal Emp. Opportunity Comm'n,* 434 U.S. 412, 416–17 (1978)(quoting *Newman v. Piggie Park Enterprises*, 390 U.S. 400, 402 (1968)). The award of a default judgment makes Ms. Powers the prevailing party and entitles her to an award of attorney's fees.

The next determination in awarding attorney fees is whether the fee requested is reasonable. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). This method, called the lodestar method, looks to the prevailing market rates in the relevant community. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010). As set forth in the attached Declaration of Brian J. Butler, Esq., the hourly rates of the attorneys who represented Ms. Powers are reasonable based on the prevailing market rates in the community. (Exhibit B, ¶11). As recorded in the attached billing record, counsel spent 43.3 hours in prosecuting this case. (Exhibit C). Multiplying the hourly rates of counsel

---

[1] Plaintiff makes this suggestion based upon belief and past experience. *See, e.g. McGonegle v. Select Comfort Retail Corp.*, No. 1:19-cv-00442-DRC (S.D. Ohio, Feb. 18, 2022) (Verdict Form, (Doc. 68) awarding plaintiff an equal amount of non-economic damages to his lost wages and benefits)).

11

by their hours expended, the cost and fees of prosecuting this case total $12,660.00 (Exhibit B, ¶ 14).

## VI. Conclusion

Ms. Powers is entitled to judgment against Defendant Pomeroy IT Solutions Sales Company as follows:

1. An award of back pay in the amount of $103,500.00;

2. An award of non-economic damages in the amount of $103,500.00;

3. An award of attorney's fees and costs in the amount of $12,660.00.

For the foregoing reasons, Plaintiff Erica Powers respectfully requests that the Court enter a default judgment in her favor against Defendant Pomeroy IT Solutions Sales Company, Inc., in the total amount of $219,660.

Respectfully submitted,

**MEZIBOV BUTLER**

/s/ Brian J. Butler
Marc D. Mezibov
Brian J. Butler (admitted *pro hac vice*)
615 Elsinore Place
Cincinnati, OH 45202
Phone: 513.621.8800
Fax: 513.621.8833
mmezibov@mezibov.com
bbutler@mezibov.com

*Attorneys for Plaintiff Erica Powers*